Good morning. Steve Hormel on behalf of Mr. Smith. Your Honor, before I start I would ask on behalf of Mr. Smith that if the court does find substantial questions worthy of reversal or The defendant first has to show that there is an actual conflict that had an adverse effect on his counsel's performance at trial. The only argument he makes about any adverse effect is that Ms. Bridgman was not called as a witness. But it's not until the argument today in this courtroom that the defendant has identified any conceivable basis on which Ms. Bridgman might have had testimony that could offer any benefit or value to the defense. The theory he's articulated today is that she might have been able to testify that the defendant himself had not instructed his employees, or at least had not instructed her, to evade FDA, to defraud the FDA in its enforcement efforts. But that wouldn't have helped, of course, because there's ample evidence in the form of multiple e-mails from the defendant and his co-conspirators about the efforts to evade the FDA and impede the FDA's enforcement. For example, the initial e-mail between Mr. Smith and his father, Larry Smith, outlines the scheme that he planned to execute and did in fact execute, whereby he would separate the drug instructions, the MMS for newbies pamphlet in the book that he suggested his father should write, from the labeling on the bottle, which would misleadingly state that the bottle was intended for water treatment. That effort to separate is plainly the basis for the intent to defraud, as part of the evidence demonstrating the intent to defraud or mislead the government. There are other actions as well. For example, when the FDA sent investigators to the first manufacturing facility and to the fulfillment company that was shipping the drugs, Mr. Smith removed the evidence from those locations and had it moved to one of his friend's properties. He then had that friend undertake the manufacturing afterward. And he instructed his co-conspirators to deliver a note to the FDA investigators if they came to execute a search warrant, telling them that they were not authorized to execute a search warrant unless they had fulfilled certain conditions. There's other evidence. There's an email from Mr. Smith to another one of his employees saying that they wouldn't ship to Maryland because Maryland is FDA. There's ample evidence, in other words, of his intent to defraud or mislead the FDA in its enforcement efforts here. It doesn't depend on whether he told Ms. Bridgman anything in particular, nor could Ms. Bridgman have refuted all of the evidence about the years-long scheme that was the basis for the scheme. So ultimately, our point is that the record here does not demonstrate any adverse effect and therefore cannot support the argument that there was an actual conflict of interest that impeded counsel's performance or that affected counsel's performance. And even if he could, he has not been able to show the kind of prejudice that he would still be required to show here because this is not within that narrow exception for joint representation of multiple defendants. I think it's not quite, I think it's important for the court to recognize that the recitation of events concerning Ms. Bridgman and the effort by Mr. Campbell, the trial, the appointed trial counsel, to interview her does not paint the complete picture here. So for example, there's nothing in the record that demonstrates that Ms. Bridgman's prior attorney who was also with the Federal Defender's Office instructed her not to cooperate. She asserted that she wanted to be represented by that former attorney and she asserted that she wouldn't waive any conflict of interest. But the Federal Defender's Office and the district judge herself both concluded there was no conflict of interest. The district court instructed Mr. Campbell that he could call her, subpoena her, and if she refused to comply with the subpoena, the court would proceed with the normal mechanisms to enforce the compulsory testimony. And that at that time, if she were to assert any privilege or any rights, that those would be considered appropriately. She had not identified any concern about self-incrimination, for example. So that was not in play at the time. It's also important that Mr. Smith's pro se representation for almost two years, actually two full years, was a period in which he had the obligation to formulate his defense, as the district court explained, that his decision on the eve of trial, less than two weeks before the trial began, to ask for appointed counsel was certainly within his rights. But it also constrained the ability of counsel. And the district court emphasized that Mr. Campbell would depend on Mr. Smith's cooperation and the information that he had gathered during the previous two years. It turned out that Mr. Smith was not cooperating with his trial counsel. And as the Supreme Court made clear in Cronick and in Morris v. Slappy, the performance of counsel constitutionally is measured based on the circumstances faced by the attorney and can be affected by the client's unwillingness to cooperate. And here, that's exactly what was happening. So, Mr. Campbell had no need, necessarily, to invest, to interview all of the 33 witnesses that Mr. Smith had identified, including Ms. Bridgman. It turned out he decided not to call any witness. It's not that he called others, but didn't call Ms. Bridgman, which might support the kind of argument that counsel has made about an adverse effect. That decision makes sense in the circumstances. It's perfectly understandable and it's constitutionally effective. It meets the standard of a reasonable performance in the circumstances where the defendant has not cooperated, where he hasn't shared the kind of information about the theory of his defense with his trial counsel. And on that basis, it's pretty clear that there's no adverse effect, no conflict of interest, and therefore, no constitutional violation. I want to point out one other thing that counsel said in his argument this morning. He focused in his argument about the materiality of the intent to defraud or mislead on the failure to register the manufacturing facility. So I'm turning back now to the substantive underlying arguments. I want to emphasize that the charge here was not for failure to register, but for introducing misbranded drugs into interstate commerce. And the scheme that I described a moment ago that's outlined in the briefs and in the indictment and the evidence demonstrates the multiple actions taken by the defendant and his co-conspirators in furtherance of that scheme, all of which are material to the intent to defraud or mislead the FDA and his suppliers. So I think it's important to focus on all of that evidence and specifically the 331A charge, which is the offense that's at issue here. If the Court has no further questions, we'd urge that the judgment be affirmed. I'd like to ask about count number six. Are there independent facts that show that Smith was, in fact, importing the drug? Judge Foote, can you tell me a little bit more about what kind of facts you're interested in? And I'll tell you what I know. It has been the defendant's position that you are relying on the acts of the co-conspirator. And what I'm asking are acts by Smith himself. Yes, Your Honor. So let me go through why I think the argument by a defendant on this point is mistaken, and then I'll tell you some of the facts that underlie the charge and the conviction there. So his argument is that Mr. Smith wasn't the importer. As a technical matter, that the term importer has a certain meaning and that that meaning can only be attributed to the Canadian shipper. But our point is that the smuggling statute demonstrates that the offense is not who's an importer as a technical matter, but who causes with the intent to defraud the—I'm sorry, let me get the statutory language for you. Whoever fraudulently or knowingly imports or brings into the United States. So the evidence that matters is Mr. Smith's communications with the Canadian supplier telling him that he wants to bring in sodium chloride under the false pretense that it is—and mislabeling, because remember the sodium chloride as a component of the drug is itself a drug, and the accompanying labeling, including the MSDS, the material safety data sheet, the invoice, the customs brokerage documents, all of that is the labeling for FDCA purposes. So that's what makes it importing merchandise contrary to law. So all of that demonstrates Mr. Smith's outreach to the Canadian supplier in furtherance of this falsehood that this is for water treatment, this chemical would be used for water treatment. That's what makes it importation contrary to law. There are emails in the record between—from Mr. Smith to his Canadian supplier that demonstrate that he wanted it shipped to a company that was not a real company, PGL Wastewater, which demonstrates the improper purpose that is then manifest in the labeling that's misleading and fraudulent. Does that answer your question, Your Honor? I think their position is, though, that how does he know what's in that labeling? Because he's not the one who is making that labeling. Right. But remember, the offense is bringing merchandise contrary to law, and what makes it contrary to law is that it's accompanied by that fraudulent labeling under the Food, Drug, and Cosmetic Act, because the sodium chloride is itself a drug in this context. So it doesn't matter who wrote the labeling. What matters is he had it brought into the United States, mislabeled. And so I really think it's a question of interpreting the statute appropriately. Thank you. If the Court has no further questions, we'd urge affirmance. Thank you. You've used all your time, but I'll give you a minute for rebuttal if you'd like it. First of all, I think it's important to keep in mind that the government specifically alleged that the defrauding activity in Count 1 for defrauding the United States was specifically related to the failure to register, and they also included the failure to have the name and place of business. Nothing to do with Mr. Smith's father, nothing to do with that activity of mislabeling or anything. So that's why the Luciardi case is extremely important, because there's nothing to direct from Mr. Smith that directed anybody to do anything in relation to the failure to register the manufacturer or to give the proper name and place of manufacturer. So I believe that's important. Also, as far as Count 6 is concerned, the government started out alleging both theories of culpability, which was the smuggling and the receiving of smuggled goods contrary to law. They chose to prosecute only at trial for him smuggling contrary to law, not for receiving. Had they pursued receiving, they may have a case. Because once he received it with the importation documents, Mr. Smith would have known what documents were used to bring him here, and he would have been part of the problem. But they actually charged him with smuggling, and they didn't prove that he knew what documents at the time it was smuggled would have been used to bring the goods across the United States. Thank you. Thank you. The case just argued, United States v. Smith, is submitted. Thank you all, coming from Washington, D.C., and also from Spokane.
judges: McKeown, Gould, Foote